# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KARL BRUCE EDWARDS, #54142-066    *

Plaintiff                            *

v                                *          Civil Action No. GLR-16-2161

MS. PROUD, Recreation Staff Officer,    *
MR. FULLER, Unit Staff Officer,
M.S. MOUBAREK, M.D., Clinical       *
Director,
DR. S. McGANN, M.D.,              *
MR. LATHAN, ACTIVE CAPTAIN,[1]
WARDEN TIMOTHY STEWARD,[2]      *
UNITED STATES OF AMERICA,
                                 *

Defendants

                                 ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants', Shannae Proud, Mohamed Moubarek, M.D., Stephany McGann, M.D. Warden Timothy Stewart, Brent Fuller, Mark Lathrop, and the United States of America, Motion to Substitute the United States and Motion to Dismiss or, in the Alternative for Summary Judgment. (ECF No. 12). Also before the Court are Plaintiff Karl Bruce Edwards' Motion for Reconsideration of the Order Denying his Motion to Appoint Counsel, his Second Motion to Appoint Counsel, his Second Motion for Reconsideration of Appointment of Counsel and his Third Motion

---

[1] Mark Lathrop was Acting Captain at FCI-Cumberland in August of 2015. ECF No. 12-7, Def. Ex. 6, Declaration of Mark Lathrop. Presently, he is Special Investigative Services Lieutenant at the institution. The Clerk shall amend the docket to reflect the correct spelling of his surname and that he is sued in his position as acting captain.

[2] The Court will direct the Clerk to correct the docket to reflect the correct spelling of Warden Timothy Stewart's surname.

to Appoint Counsel. (ECF Nos. 18, 19, 20, 21). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D. Md. 2016). For the reasons outlined below, Edwards' Motion for Reconsideration of the Order Denying his Motion to Appoint Counsel, his second Motion to Appoint Counsel, his second Motion for Reconsideration of Appointment of Counsel and his third Motion to Appoint Counsel (ECF Nos. 18, 19, 20, 21) will be denied. Defendants' Motion to Substitute, Motion to Dismiss (ECF No. 12) will be granted.

## I.    BACKGROUND

Plaintiff Edwards is an inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). Edwards alleges in the Complaint that after he tripped and hurt his ankle on February 5, 2015, at 2:24 p.m. he reported the injury to Shannae Proud, a recreation staff officer at FCI Cumberland. (Compl. at 8). Proud allegedly "disregarded" Edwards' safety and denied him immediate medical treatment. (Id. at 8). Edwards claims Proud later "fabricated" that he had refused to go to the Health Service in the injury report log. (Id. at 9). He faults Captain Mark Lathrop for failing to oversee the proper documentation of his injury. (Id.). At 7:00 p.m. that evening, Edwards reported his ankle injury to Officer Brent Fuller, who also allegedly "disregarded" his safety and denied him emergency treatment. (Id. at 8). Edwards states he was not seen by medical providers until the following day, February 6, 2015.

Edwards pleads that he had to wait until February 10, 2015, to learn from Nurse VanMeeter that an x-ray revealed his ankle was "broken." (Id.). On February 19, 2015, Dr. McGann informed Edwards that his left ankle was fractured, not broken, and would

heal while he waited to see an orthopedist. Edwards faults McGann for failing to provide direct, timely, and proper medical treatment during this time, and Dr. Moubareck for failing to supervise his timely diagnosis and medical care. (Id. at 9). Edwards faults McGann for refusing to replace his ankle brace. Edwards alleges Moubarek confiscated his soft shoes and walking cane in retaliation for filing Administrative Remedy Procedure requests ("ARP"). (Id.). Edwards claims Warden Stewart failed to oversee safe and proper operations regarding policy and injury procedures. (Id.).

In his pro se Complaint, he presents claims pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671-80. (ECF No. 1). Edwards alleges Defendants were negligent, committed medical malpractice, and denied him constitutionally adequate medical care for an ankle injury he suffered on the afternoon of February 5, 2015, after he tripped in the gym at FCI-Cumberland. As redress, Edwards seeks monetary damages in the amount of $50,000 for his pain and suffering, as well as for "needless anxiety, depression, sleeplessness, and emotional distress." (Compl. at 10, ECF No. 1).

## II.    DISCUSSION

### A.    Motion to Appoint Counsel

A district court need not request an attorney's assistance pursuant to 28 U.S.C. §1915(e)(1) unless the case presents complex issues or exceptional circumstances. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Exceptional circumstances include a litigant who "is barely able to read or write," id. at 162, or clearly "has a colorable claim but lacks the capacity to present it," Berry v. Gutierrez, 587 F. Supp. 2d

717, 723 (E.D. Va. 2008); see also Altevogt v. Kirwan, No. WDQ-11-1061, 2012 WL
135283, at *2 (D. Md. Jan. 13, 2012).

Here, on April 4, 2017, the Court denied without prejudice Edwards' first Motion
for Appointment of Counsel, noting that he had adequately presented his claims, filed an
opposition to Defendants' dispositive motion, and the claims presented were not overly
complex. (ECF No. 17).

On May 8, 2017, Edwards filed a Motion for Reconsideration of the denial (ECF
No. 18) and a second Motion to Appoint Counsel (ECF No. 19). In the Motion for
Reconsideration, Edwards avers that subsequent to denial of his first Motion to Appoint
Counsel, Defendants' filed a Reply, which he claims is an "unusual action," warranting
appointment of counsel. (Id.). Edwards also claims that Bureau of Prisons' policy
prohibits inmates from assisting each another with legal matters. (Id.). Edwards' second
Motion to Appoint Counsel, Second Motion for Reconsideration, and third Motion to
Appoint Counsel reiterate these assertions. (ECF Nos. 19, 20, 21).

Motions for reconsideration of a non-final interlocutory order, as is the case here,
are governed by Federal Rule of Civil Procedure 54(b) and "are not subject to the strict
standards applicable to motions for reconsideration of a final judgment." Am. Canoe
Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003). While the precise
standard governing a motion for reconsideration of an interlocutory order is unclear,
courts in this circuit look to Rule 59(e) for guidance. Butler v. Directsat USA, LLC, 307
F.R.D. 445, 449 (D. Md. 2015) (noting that courts frequently look to the standards
articulated in Rules 59(a) and 60(b) "for guidance in considering such motions"). Under

Rule 59(e), a district court may alter or amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law [or] prevent manifest injustice." U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (citations and internal quotation marks omitted).

Here, Defendants' filing of a Reply is not unusual. Nor has there been an intervening change of law, new evidence, or demonstration of a need to prevent "manifest injustice." Id. Accordingly, the Motions for Reconsideration (ECF Nos. 18, 20) will be denied. Further, Edwards has demonstrated his ability to present his claims and file an opposition in this litigation. Defendants' filing of a Reply does not render this case complex or give rise to exceptional circumstances warranting appointment of counsel. Accordingly, Edwards' Motions for Appointment of Counsel (ECF No. 19, 21) will be denied.

## B. Motion to Dismiss or, in the Alternative, for Summary Judgment

### 1. Standard of Review

Defendants moves to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the Alternative, under Rule 56. "When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted). Under Rule 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to

any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(3), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material"

fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

This Court must also abide by its affirmative obligation to prevent "factually unsupported claims and defenses" from going to trial. Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993) (citing Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmovant is "merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (citations omitted).

Defendants rely on exhibits attached to their dispositive Motion, which is titled in the alternative as a Motion for Summary Judgment. Consonant with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Clerk sent notice to Edwards informing him

that he may file an opposition with affidavits and exhibits in support, and he has done so. (ECF Nos. 13, 14). Accordingly, the Court will consider Defendants' exhibits and declarations in the context of a Motion for Summary Judgment.

### 2. Analysis

Defendants argue Edwards' tort claims should be dismissed because he failed to first file his medical malpractice claim with the Health Care Alternative Dispute Resolution Office ("HCADRO") and submit the required certificate of a qualified expert with the Complaint. Defendants also argue that the individual defendants should be dismissed and the United States substituted as the sole Defendant. Additionally, they argue the <u>Bivens</u> claims should be dismissed or summary judgment entered in their favor because none of the Defendants acted with deliberate indifference to Edwards' serious medical need. Defendants also raise qualified immunity as an affirmative defense.

### i. FTCA Claims

#### a. Substitution of United States for Individual Defendants

An action against the United States pursuant to the FTCA is the exclusive remedy for torts committed by government employees in the course of their employment. See 28 U.S.C. §2679(b)(1). "The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, confers absolute immunity on federal employees from common-law tort claims arising out of acts they undertake in the course of their official duties." <u>Osborn v. Haley</u>, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).

The remedy against the United States under FTCA for injury arising from the negligent "or wrongful act or omission of any employee of the Government while acting with the scope of his office or employment" is exclusive, and bars any damages action against the employee "arising out of or relating to the same subject matter." 28 U.S.C. §2679(b)(1)).  When a suit is filed against an individual federal employee, rather than the United States, the Westfall Act authorizes the Attorney General or his designee "to issue a certification that the employee was acting within the scope of his office or employment at the time the incident arose."  The Attorney General has delegated this authority to the United States Attorneys.  28 C.F.R. § 15.3; see also Gutierrez de Martinez v. DEA, 111 F.3d 1148 (4th. Cir. 1997).

On November 16, 2016, the United States Attorney for the District of Maryland, certified that Fuller, McGann, Moubarek, Proud, Lathrop, and Stewart were acting within the scope of their employment at the time of the incidents.  (ECF No. 12-9).  Edwards, who has the burden of persuasion "to refute the certification of scope of employment issued by the Attorney General and to prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment," Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000) (citing Maron v. United States, 126 F.3d 317, 323 (4th Cir. 1997), does not challenge the certification or otherwise assert these Defendants were acting outside the scope of their employment.  (Pl's. Resp., ECF No. 14).  Accordingly, the Court will dismiss Edwards' claims of negligence and malpractice against Fuller, McGann, Moubarek, Proud, Lathrop, and Stewart and substitute the United States as the Defendant.

## b.    Conditions Precedent

Under the FTCA, the United States is liable, as a private person, for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting under the scope of his office or employment."  28 U.S.C. §1346(b) (1994).  The FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred.  Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).[3]

In Maryland, where Edwards' injury and treatment occurred, the Maryland Health Care Malpractice Claims ("HCMCA") Act establishes the state procedure for medical malpractice actions.  See Md.Code Ann., Cts. & Jud. Proc. §§ 3-2A-01 et seq.  Prior to any judicial action, claims "against a health care provider for medical injury" must be submitted within ninety (90) days to the Health Care Alternative Dispute Resolution Office ("HCADRO") with "a certificate of qualified expert . . . attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury."  Id. § 3–2A–04(b)(1)(i).  A medical malpractice action filed in either state or federal court that fails to first meet the conditions of HCMCA "shall be dismissed, without prejudice."  Id.; see Willever v. United States, 775 F.Supp.2d 771, 784 (D.Md. 2011) ("Conditions precedent are not waivable because they are so fundamental to a plaintiff's right to bring a cause of action in the first instance. If a

_____

[3] Edwards filed an administrative claim for damages under the FTCA based on his February 5, 2015 injury, which was denied by the Bureau of Prisons' Regional Counsel on February 5, 2016.  (Compl., Pl. Ex. C, ECF No. 1-3).

plaintiff fails to comply with HCMCA's expert certificate and report requirements, his case must be dismissed without prejudice.") (citing <u>Carroll v. Konits</u>, 400 Md. 167, 929 A.2d 19, 28 n. 12 (2007)); <u>Hampel v. United States</u>, 706 F.Supp.2d 629, 631 (D.Md. 2010) (dismissing claim for failure to comply with HCMCA). Complying with HCMCA's requirements is "not merely a procedural rule, but is a condition precedent to bringing a medical malpractice lawsuit." <u>Willever,</u> 775 F.Supp.2d at 777. "[A] plaintiff <u>cannot litigate his case at all</u> if he does not comply with HCMCA." <u>Id.</u> at 785. The HCMCA condition precedent applies to actions filed by self-represented inmates. <u>See</u> <u>Johnson v. Maynard,</u> 2013 WL 4176958 (D.Md. August 12, 2013); <u>Skaggs v. Correctional Medical Services,</u> 2010 WL1713649 (D.Md. 2010).

Edwards does not dispute his failure to file his tort claims with the HCADRO or to submit the required certificate of a qualified expert. Instead, he opines that filing with the HCADRO is optional, and that he filed his claims directly with the Bureau of Prisons instead. Edwards' argument is unavailing because compliance with the HCMCA is a condition precedent to bringing a malpractice action in federal court in Maryland. Consequently, Edwards' claims of malpractice and negligence under the FTCA must be dismissed.

### ii. Eighth Amendment Claims

Edwards claims that he was denied constitutionally adequate medical care in violation of the Eighth Amendment at FCI Cumberland. As a federal prisoner, Edwards asserts his civil rights claims pursuant to <u>Bivens</u>, 403 U.S. at 388.

The gravamen of Edwards' claim is that his ankle was not x-rayed until February 10, 2015, five days after the injury occurred, and because he did not see an orthopedist until twenty-two days later, "seventeen days of needless pain and suffering was inflicted" on him. (Compl. at 8). In his Opposition, Edwards contends that the analgesics (Tylenol and ibuprofen) prescribed for him provided insufficient pain relief. He asserts he was not offered Naproxen or any other pain medication. (Pl.'s Resp. at 3).[4] Defendants argue that when treating Edwards, they did not act with the requisite deliberate indifference required to establish an Eighth Amendment violation. (ECF No. 12).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). A "serious . . . medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

---

[4] The medical record does not indicate that Edwards complained about the medication or asked to change the prescription. (ECF No. 4, Attachs. A–E).

necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hudson v. McMillan, 503 U.S. 1, 9 (1992). Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Lightsey, 775 F.3d at 178.

Therefore, "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. The Fourth Circuit has described this as an "exacting standard . . ." Id. This subjective component requires "subjective recklessness" in the face of the serious medical condition. See Farmer, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, 511 U. S. at 837. Thus,

"[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Brice v. Va. Beach Corr. Center, 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844). But, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." Brice, 58 F.3d at 105. Thus, "[d]eliberate indifference is "more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks and alterations omitted).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2001). Notably, "[a] prisoner's disagreement with medical providers about the proper course of treatment does not establish an Eighth Amendment violation absent exceptional circumstances." Lopez v. Green, 2012 WL 1999868, at *2–3 (D.Md. June 4, 2012) (citing Wright v. Collins, 766 F.2d 841, 849 (4th Cir.1985)). Mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. See Wright, 766 F.2d at 849; Wester v. Jones, 554 F.2d 1285 (4th Cir.1977). Moreover, "any negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998).

### a.    Claims Against McGann

McGann was commissioned as an officer in the United States Public Health Service ("PHS") on April 3, 3015. (See McGann Decl. ¶ 1, ECF No. 12-4). The remedy against the United States under the FTCA is exclusive of any other civil action or proceeding for personal injury resulting from the performance of medical functions by a commissioned PHS officer acting within the scope of his or her employment. See 42 U.S.C. §233(a). Thus, McGann is entitled to absolute immunity from suit as to all claims arising from the medical care she provided after her commissioning.

As to the care provided before April 3, 2015, Edwards alleges McGann disregarded and failed to provide timely care to treat his ankle and asserts she refused to replace his leg brace.[5] Edwards' injury constitutes a serious medical need which satisfies the first prong of the deliberate indifference standard. The Court concludes, however, that the record does not support that McGann acted with deliberate indifference to his injury.

On February 10, 2015, McGann was notified that Edwards had fractured his left ankle, and ordered an orthopedic consultation and additional ibuprofen for him. (McGann Decl. Attach. A, ECF No. 12-3).[6] On February 19, 2015, McGann saw Edwards for follow-up. (McGann Decl. ¶ 5). Edwards reported that the swelling had decreased. (Id.). McGann's notes indicate Edwards was scheduled for an orthopedic

---

[5] The Court assumes Edwards is referring to the orthopedic boot.
[6] The record does not explain the timeline for McGann's receipt of the x-ray results.

consultation the following week and that she gave him a prescription for ibuprofen for pain.  (Id.).

On February 27, 2015, Edwards was transported outside the prison for an orthopedic consultation. The orthopedist found Edwards' left ankle was fractured without significant angulation or displacement.  (Id. ¶ 6, Attach. B).  McGann reviewed the medical findings and recommended continued non-operative treatment, (Id. Attach. C), noting the fracture was stable and healing, (Id. ¶ 6).  She instructed Edwards to continue wearing the boot on his left foot and return for a follow-up visit in three weeks.  (Id.).

On March 6, 2015, McGann evaluated Edwards for continued left ankle pain.  (Id. ¶ 7, Attach. A).  She instructed him to continue wearing the orthopedic boot, place weight on the foot as tolerated, and updated his pain medication prescription.  (Id.).  Edwards, who continued to use crutches, was scheduled to see the orthopedist in three weeks for reevaluation and x-rays. (Id.).

On March 23, 2015, Edwards reported to Health Services complaining of ankle pain and for ibuprofen.  (Id. ¶ 8).  Edwards was wearing his ankle boot and using crutches.  (Id.).  Dr. McGann prescribed more ibuprofen, counseled him to return as needed, and continued to monitor him.  (Id.).

On March 24, 2015, Edwards went for a second orthopedic consultation.  (Id. ¶ 9). McGann reviewed the consultation results which indicated that Edward's ankle fracture was healing well.  (Id. at Attach. D).  McGann suggested range of motion exercises for Edwards.  (Id.).  She also noted that Dr. Tice, the orthopedist, had recommended that Edwards transition out of the boot into a regular tennis shoe and return for a follow up

visit in four weeks. (Id. at Attach. A). On April 2, 2015, Edwards and McGann discussed the results of the orthopedic consultation and his plan of care, which Edwards indicated he understood. (Id. ¶ 10).

Edwards' disagreement with the type of medication prescribed for him is essentially a disagreement over the course of his care, and falls short of establishing deliberate indifference. Of note, the record does not reveal any discernible difference in the conservative non-operative treatment prescribed for Edwards prior to and after confirmation of the fracture by x-ray or after the first orthopedic visit. Viewing the facts in the light most favorable to Edwards, there is no genuine dispute of material fact as to whether McGann acted with requisite deliberate indifference in treating him. Accordingly, McGann is entitled to summary judgment as to this claim. In so finding, the Court does not intend to minimize Edwards' concerns about his discomfort during the healing process, only that the evidence is insufficient to establish deliberate indifference.

### b. Claims Against Moubarek

Next, Edwards alleges that Moubarek[7] disregarded and failed to oversee proper and timely diagnosis and medical treatment of his ankle, and rescinded his soft shoes and walking cane in retaliation for filing an ARP. Insofar as Edwards brings this claim against Mouberek in his supervisory role as Clinical Director at FCI Cumberland, the

---

[7] Edwards asserts, without support, that Moubarek is not licensed to practice medicine in Maryland. (Pl.'s Resp. at 5). His assertion is refuted both in Moubarek's Declaration, (Moubarek Decl. ¶ 1, ECF No. 12-5), and in information on the website of the Maryland Board of Physicians. Profile of Mohamed Moubarek, Md. Bd. of Physicians Practitioner Profile Sys., https://www.mbp.state.md.us/bpqapp/PProfile.asp (last visited June 13, 2017).

theory of respondeat superior does not apply in a <u>Bivens</u> action. See <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir. 2001) ("In a <u>Bivens</u> suit, there is no respondeat superior liability.").

Moubarek's only personal involvement in Edwards' treatment was on July 9, 2015 when he examined him. (McGann Decl. ¶ 19; <u>see also</u> Moubarek Decl. ¶ 4, ECF No. 12-5). After examination and review of the orthopedic reports, Moubarek instructed Edwards to return his cane and soft shoes. (Moubarek Decl. ¶ 4). Edwards' disagreement with this medical decision does support a claim of deliberate indifference.[8] Even viewing the facts in the light most favorable to Edwards, there is no dispute as to any issue of material fact and no reasonable jury could conclude that Moubarek was constitutionally indifferent to his medical needs. Accordingly, Moubarek is entitled to judgment in his favor as to this claim as a matter of law.

### c. Claims Against Warden Stewart

Edwards faults Stewart because he failed "to oversee safe and proper operations regarding policy, and injury procedure" when he filed complaints and grievances on

---

[8] Insofar as Edwards argues that his soft shoes and cane were confiscated in retaliation for filing an ARP, the Court concludes that he has failed to support a constitutional claim of retaliation. Edwards' bare and conclusory assertions of retaliation are readily distinguishable from the plaintiff's assertions in <u>Booker v. South Carolina Department of Corrections</u>, 855 F.3d 533, 545 (4th Cir. April 28, 2017). In <u>Booker</u>, the United States Court of Appeals for the Fourth Circuit ruled an inmate's "detailed factual allegations" concerning disciplinary charges brought against him after he threatened suit against a mailroom supervisor for tampering with his mail constituted an colorable retaliation claim. <u>Id.</u> at 540. Here, Edwards provides no evidence supporting his retaliation claim. Indeed, Edwards does not show Moubarek was even aware that an ARP had been filed. Of note, Moubarek attests that he instructed Edwards to return the cane and soft shoes after he first examined him and noted Edwards' positive orthopedic reports. (Moubarek Decl. ¶ 4).

numerous occasions." (Compl. ¶ 6). He also alleges that Stewart disregarded his need for emergency attention on February 5, 2015. (Id.).

Stewart is not a medical professional. As Warden, Stewart does not evaluate or treat inmates. Rather, Stewart defers to the expertise of the medical providers in the Health Services Department at FCI-Cumberland. (Stewart Decl. ¶¶ 2–3, ECF No. 12-6). Stewart declares that he has no knowledge of Edwards' ankle injury or was aware of the medical treatment provided to him. (Id.). As a nonmedical correctional supervisor, Stewart was entitled to rely on the medical judgment of prison medical providers. Further, Edwards does not argue that Stewart hindered Edwards' medical care. See Miltier v. Beorn, 896 F.3d 848, 854–55 (4th Cir. 1990) (supervisory prison officials are entitled to rely on prison medical staff but may be found deliberately indifferent through intentional interference with this medical treatment).

Having concluded that medical staff members were not deliberately indifferent to Edwards' medical needs, it follows that Edwards cannot demonstrate supervisor liability as to Stewart, a nonmedical supervisor. A supervisor cannot have tacitly authorized or been indifferent to a constitutional violation that never took place. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Thus, even when the facts are judged in the light most favorable to Edwards, there are no genuine issues of material fact in dispute. Accordingly, Stewart is entitled to summary judgment as a matter of law.

### d. Claims Against Shannae Proud and Brent Fuller

Edwards argues that Proud disregarded his safety and denied him immediate emergency care. Proud attests that on February 5, 2015, after learning Edwards had hurt

his ankle, she asked him if he wanted to go to Health Services, but Edwards declined. (Proud Decl. ¶ 4, ECF No. 12-2). Proud denies that she disregard his safety and denied him immediate emergency medical treatment for his left ankle injury. (Id. ¶ 2). Proud recorded Edwards' injury and his refusal to go to Health Services for treatment in the "Injury Log Book." (Id. ¶ 5, Attach. C). Edwards disputes that he refused to go to Health Services. (See Compl. at 8, 9). Edwards fails, however, to provide evidence to corroborate his assertion that the injury log was fabricated. And assuming arguendo that Proud "fabricated" the injury log as he asserts, there is no evidence that such conduct, while unacceptable, caused Edwards any injury, and nevertheless does not rise to the level of a constitutional violation. Nor does Edwards provide evidence to demonstrate that Proud was aware that his ankle injury posed an immediate life-threatening emergency, nor is there anything in the record to suggest Edwards' injury was life threatening and required immediate emergency care.

The evening of February 5, 2015, Fuller gave Edwards ice to apply to his ankle, and called Health Services. (Fuller Decl. ¶ 3, ECF No. 12-3). Health Services staff advised that Edwards should report to Health Services the following morning. (Id.). Fuller was entitled to rely on the advice of medical providers. No reasonable jury could conclude that Fuller was constitutionally indifferent to Edwards' medical needs. Accordingly, Proud and Fuller are entitled to summary judgment in their favor.

### e.    Claims Against Mark Lathrop

Edwards alleges that on August 3, 2015, he requested Proud's initial injury report of February 5, 2015, but Lathrop "disregarded and failed to oversee safe and proper

documentation of" the injury log book. (Compl. ¶ 5). These allegations do not support a constitutional claim premised on deliberate indifference to Edwards' medical needs. Edwards does not plead Lathrop knew of a serious risk to his medical needs and acted recklessly. Thus, Edwards's claims against Lathrop will be dismissed under Rule 12(b)(6). Accordingly, the Court will grant Defendants' Motion.

### III. CONCLUSION

For the foregoing reasons, Edwards' Motion for Reconsideration of the Order Denying his Motion to Appoint Counsel, Second Motion to Appoint Counsel, Second Motion for Reconsideration of Appointment of Counsel, and Third Motion to Appoint Counsel (ECF Nos. 18, 19, 20, 21) will be denied. Defendants' Motion to Substitute, Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 12) will be granted. A separate Order follows.

Entered this 25th day of September, 2017          _____/s/_____

George L. Russell, III
United States District Judge